UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIERNO AMADOU BARRY,<br><br>                              Petitioner,<br><br>v.<br><br>JEREMY CASEY, Facility administrator at the Imperial Regional Detention Facility, GREGORY J. ARCHAMBEAULT, Director of the U.S. Immigration and Customs Enforcement San Diego Field Office, DAVID VENTURELLA, acting Director of U.S. Immigration and Customs Enforcement, MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, and TODD BLANCHE, Acting U.S. Attorney General,<br><br>                              Respondents. | Case No.: 3:26-cv-3947-JES-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Thierno Amadou Barry's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed on July 9, 2026. ECF No. 1 ("Pet."). Pursuant to the Court's order to show cause, Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 4 ("Return"), 5. For the reasons set forth below, the Court **GRANTS** the petition.

1

## I.      BACKGROUND

The following facts are alleged in the Petition and not contested by Respondents. Petitioner, a citizen of Guinea entered the United States on December 27, 2023. Pet. ¶¶ 2, 21. Petitioner was arrested by Custom and Border Patrol ("CBP") agents and was released on December 29, 2023, on an Order of Release on his own Recognizance and ordered to appear in person before an immigration judge on October 4, 2024. *Id.* ¶¶ 21-22.

Petitioner fled Guinea because he feared that the government would harm or kill him due to his political activities with the Union of Democratic Forces of Guinea and his Fulani ethnicity. *Id.* ¶ 23. Petitioner applied for asylum within one year of his arrival to the United States and was granted work authorization. *Id.* ¶ 24. Petitioner was in full compliance with all immigration laws and regularly checked in as required. *Id.* ¶¶ 25-26, 29. On October 23, 2025, Petitioner attended an in-person check-in with immigration officials and was arrested without any notice or opportunity to contest the detention. *Id.* ¶ 29. Petitioner's asylum application is now pending before the immigration court. *Id.* ¶ 32. On May 9, 2026, Petitioner was transferred to Imperial Regional Detention Facility, where he is currently detained. *Id.* ¶ 5.

## II.      LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview

3:26-cv-3947-JES-DEB

of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.    DISCUSSION

In his petition, Petitioner argues that his re-detention and the manner in which it was carried out violated Procedural Due Process. Pet. ¶¶ 33-36, 48. Respondents argue only that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), but correctly concede that courts have consistently held otherwise. *See generally,* Return. The Court does not find that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) for the reasons set forth in *Martinez Lopez v. LaRose*, No. 25- cv-2717-JES-AHG, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025). The Court, therefore, elects to follow the reasoning stated therein and incorporates it by reference. The Court analyzes Petitioner's Procedural Due Process claim below.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of release. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that typically, the term "released on their own

recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)").

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034-35 (N.D. Cal. 2025). Several district courts have followed suit and found due process violations where the petitioners in the cases were specifically identified to be released under Order of Release on Recognizance with an accompanying I-220 form. *See, e.g., C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (finding due process violation where petitioner was originally released on OREC).

The Court agrees with all the foregoing courts and similarly holds that Respondents created a liberty interest in Petitioner when they granted his release on parole. As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard regarding the revocation of such an interest, but also that the notice and opportunity be meaningful. No. 25-CV-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Petitioner alleges that he has not been provided notice or opportunity to be heard regarding the revocation of his parole. Pet. ¶¶ 29, 51. Further, without changed circumstances or another factor justifying re-detention, any notice and opportunity to be heard that did occur could not have been meaningful. *See Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) ("An alien's opportunity to be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release 'at any time' on a discretionary, but not unlimited, basis."). Petitioner alleges, and Respondents do not contest, that there were no changed circumstances or individualized findings in Petitioner's case justifying his re-detention. *Id.* ¶ 51. Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained him in October of 2025.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and does not reach the remainder of Petitioner's claims as the requested relief is granted. Because the Court grants the petition on the Due Process grounds and concludes that Respondents' revocation of Petitioner's supervised release violates procedural due

3:26-cv-3947-JES-DEB

process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting release that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **July 28, 2026**, confirming that Petitioner has been released. The Clerk of Court is directed to close the case.

     **IT IS SO ORDERED.**

Dated: July 21, 2026

_____

Honorable James E. Simmons Jr.
United States District Judge

3:26-cv-3947-JES-DEB